O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:        Attorneys **NOT** Present for Defendants:

**Proceedings:**        IN CHAMBERS (No Proceedings Held)

This matter is before the Court on the motion for summary judgment or partial summary judgment filed by Santa Barbara Police Department Officers Thomas Eccles ("Officer Eccles"), Ed Ruiz ("Officer Ruiz"), and Mark Corbett ("Officer Corbett") (collectively "Defendants"). Defendants argue the Court should grant summary judgment in their favor because they are immune from suit under the doctrine of qualified immunity. For the reasons set forth below, the Court GRANTS the motion in part and DENIES it in part.[1]

## I.     INTRODUCTION

On October 29, 2009, Plaintiff filed his original complaint alleging various causes of action arising from his arrest at the Indochine nightclub in Santa Barbara, California. Plaintiff named as defendants Indochine, Mike George ("George"), Michael Gomez ("Gomez"), Officer Eccles, Officer Ruiz, Officer Corbett, and the City of Santa Barbara. On April 19, 2010, Plaintiff filed the first amended complaint ("FAC"), which is the operative complaint. The FAC added Nylon Project LLC (doing business as Indochine) as a defendant. On February 22, 2011, pursuant to stipulation, the Court dismissed the claims against defendants the City of Santa Barbara and the City of Santa Barbara Police Department and dismissed Plaintiff's cause of action for *Monell* liability. On March 23, 2011, again pursuant to stipulation, the Court dismissed Plaintiff's causes of action for false arrest and negligent employment, and dismissed the allegations of false arrest in

---

[1] Docket No. 60.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Plaintiff's cause of action for conspiracy.

Officer Eccles, Officer Ruiz, and Officer Corbett are named only in Plaintiff's first cause of action for violation of his civil rights, pursuant to 42 U.S.C. section 1983, through unreasonable force, false arrest, malicious prosecution, and conspiracy to deprive Plaintiff of his civil rights. Defendants seek summary judgment in their favor on each of these claims within the first cause of action.

## II.    FACTS

The following facts are undisputed, unless otherwise noted.[2] On February 28, 2008, Plaintiff was attending a community policing seminar in Santa Barbara, California in connection with his job as a deputy district attorney for the County of Los Angeles. Statement of Undisputed Facts ("SUF") ¶ 1. Plaintiff met Dusan Pavlovic ("Pavlovic"), another attendee, during the seminar's first day. SUF ¶ 2. At some point that day, a group of seminar attendees, including Plaintiff and Pavlovic, decided to meet at a local café at around 6 p.m. to watch a Los Angeles Lakers basketball game. SUF ¶ 3. Plaintiff drank four martinis at the café. SUF ¶ 5. He also drank a "shot" of alcohol, but he isn't sure whether he consumed the shot at the café or at another bar later in the evening. SUF ¶ 6. The group left the café around 10:00 p.m. and went to a bar, where Plaintiff had another drink. SUF ¶¶ 7-8.

After passing about 20 minutes at the second bar, Plaintiff and Pavlovic decided to leave and go to Indochine. SUF ¶ 9. Sometime after arriving at Indochine, Plaintiff went into the bathroom and telephoned a friend. SUF ¶ 10. Plaintiff then went looking for Pavlovic and found him in an outdoor area of the nightclub. SUF ¶ 11. Pavlovic handed Plaintiff a drink and then, within seconds, Gomez (Indochine's "bouncer") approached Plaintiff and told him that Plaintiff had to get Pavlovic out of the bar. SUF ¶ 12. Meanwhile, George (Indochine's manager) called the Santa Barbara Police Department to report an ongoing disturbance involving Plaintiff and Pavlovic. SUF ¶ 16. George gave physical descriptions of two men, who George reported were harassing female customers

---

[2] If the Court has not included a proffered fact, it has not needed to rely upon that fact for its decision.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

and refusing to leave the nightclub.  SUF ¶ 16.  Plaintiff does not dispute the fact that George called the police and relayed this information, but instead disputes that he actually refused to leave Indochine or was harassing female customers.  Statement of Genuine Issues ("SGI") ¶ 16.  Since SUF ¶ 16 is intended only to establish

the fact of George's phone call to the police and the substance of that call, rather than the truth of George's statements, the Court treats SUF ¶ 16 as undisputed.

Plaintiff claims that he was standing between Gomez and Pavlovic as Gomez started shoving them toward the back door of the bar.  SUF ¶¶ 13-15.  While this was happening, Pavlovic started saying, "We're DAs, we're DAs."  SUF ¶ 13.  Pavlovic also reached over Josfan to grab Gomez.  SUF ¶ 13.[3]  It is undisputed that Gomez was involved in pushing Plaintiff and Pavlovic out of Indochine and into the alley behind the nightclub.  SUF ¶ 17.  Plaintiff asserts that George and two other men aided Gomez.  Plaintiff's Separate SUF ¶ 2.  This dispute is irrelevant for purposes of this motion.  After the door closed behind them, Pavlovic pounded on the door and repeatedly shouted, "This is fucking bullshit."  SUF ¶ 18.  Plaintiff yelled at Pavlovic to explain to him why they had been thrown out of Indochine.  SUF ¶ 19.

While Plaintiff and Pavlovic remained in the alley behind Indochine, Officer Eccles, Officer Ruiz, and Officer Corbett arrived at the nightclub in response to George's call.  SUF ¶ 21.  George testified at his deposition that he told Officer Eccles, "The two guys I called the police on we just got them out the back door.  One guy hit me in the throat.  I got pushed and shoved.  They're out back."  SUF ¶ 21.  According to Officer Eccles' report, before the officers entered the alley, George told him "that two belligerent male subjects had threatened and assaulted him and had refused to leave the bar."  Defendants' Exhibit D at 38.[4]  Plaintiff does not dispute that George so testified at his

---

[3] Although SUF ¶ 13 states that Gomez reached over Plaintiff to grab Pavlovic, Plaintiff's deposition testimony (cited in support of SUF ¶ 13) states the opposite – that Pavlovic reached for the bouncer.

[4] The Court overrules Plaintiff's hearsay objection to the police reports in Defendants' Exhibit D and Exhibit F.  A police officer's statements and observations recorded in a police report are admissible under the public-records hearsay exception

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | | Date | January 13, 2012 |
|---|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | | |

deposition, but Plaintiff does dispute that George actually made such a statement to Officer Eccles on the night of the incident.  SGI ¶ 21.  In support of this contention, Plaintiff cites to Gomez's deposition testimony that he did not recall seeing George speaking to the officers before the officers went into the alley to find Plaintiff and Pavlovic.  Plaintiff's Exhibit E at 131:4-13.  The fact that Gomez merely could not recall at his deposition whether he had seen George speak to the police – as opposed to affirmatively denying that George spoke to the police – is not sufficient evidence to create a genuine dispute.

Plaintiff also cites to George's interview with Santa Barbara Police Department Detective Ella, who conducted a follow-up investigation.  George told Detective Ella, "I could see flashlights in the hallway and I knew it was the police.  So I ran out and I said, hey, they're in the back.  So we all ran back here.  I opened the door for the cops." Plaintiff's Exhibit B at 5:12-16.  This evidence actually reinforces the evidence that George spoke to the police before they confronted Plaintiff and Pavlovic.  Further, George's statement to Detective Ella that George told the police, "[H]ey, they're in the back" is consistent with his later deposition testimony that he told the police, "They're out back."  That George did not relate to Detective Ella everything he told the officers

---

contained in Federal Rule of Evidence 803(8).  *See Lang v. Cullen*, 725 F. Supp. 2d 925, 960 (C.D. Cal. 2010) (Morrow, J.) ("[T]o the extent the police reports record the out-of-court statements of [the authors of the reports], they are admissible."); *United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted . . . .").  Plaintiff also objects to the statements of third persons recorded in the police reports as hearsay within hearsay.  The Court overrules this objection.  The witness statements relied upon by the Court are not being offered for their truth (e.g., for purposes of this motion it does not matter whether Plaintiff actually shoved George, only that George told the officers he had).  Rather, the statements are being offered for their effect on the listener or reader (e.g., to explain why the police officers arrested Plaintiff and why the Santa Barbara District Attorney chose to file charges against Plaintiff). Therefore, the statements are admissible for this limited purpose.  *See Lang*, 725 F. Supp. 2d at 960 ("The [police] reports contain hearsay statements by [a third party] . . . which are inadmissible unless an exception to the hearsay rule applies or they are being offered for a non-hearsay purpose.").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|----------|------------------------|------|------------------|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

before they entered the alley does not create a genuine dispute. This is particularly true because George's deposition testimony does not contradict his earlier statement to Detective Ella. Thus, the Court treats SUF ¶ 21 as undisputed.[5]

Gomez also testified at his deposition that he spoke to the officers before they entered the alley for the first time, and told them,"These two gentleman have been asked to leave repeatedly. One of them exposed themselves. They've both been pushing against us while I tried to get them to leave. They grabbed my manager by the throat. And they were trying to restrain both of us from pushing them out." Defendants' Exhibit B at 10:10-15. In contrast, Plaintiff claims that Gomez said nothing more to the officers than, "They're out here." SGI ¶ 31; Plaintiff's Exhibit D at 131. But the portion of Gomez's deposition testimony relied upon by Plaintiff does not contradict Gomez's fuller testimony later in the same deposition, and so does not create a genuine dispute as to what Gomez told the officers before they entered the alley for the first time.

Officer Eccles, who was wearing a uniform, was the first officer who stepped through Indochine's back door and into the alley. SUF ¶ 22. Officer Ruiz and Officer Corbett, both of whom were in plain clothes, followed Officer Eccles into the alley. SUF ¶ 22; Plaintiff's Opp. at 2; Defendants' Exhibit D at 43. Defendants claim that Officer Eccles ordered both Plaintiff and Pavlovic to lie on the ground. SUF ¶ 22. Although Plaintiff does not dispute SUF ¶ 22, Plaintiff "[d]isputes that [he] did not comply with Eccles, Corbett's or Ruiz's orders and that there were any directed to Plaintiff." SGI ¶ 32. Thus, the Court treats SUF ¶ 22 as disputed only regarding whether Officer Eccles specifically ordered not just Pavlovic, but also Plaintiff to the ground. Pavlovic said, "This is bullshit" and did not comply with Officer Eccles' order. SUF ¶ 21. Officer Eccles eventually shot Pavlovic with his taser device and subdued Pavlovic. SUF ¶ 22.

---

[5] Defendants do not dispute Plaintiff's SUF ¶ 3, which states, "When Officer Eccles entered Indochine, George said nothing more than, 'Hey, they're in the back' to Eccles before Gomez, George and Schoener followed Eccles into the alley." The evidence does not support that this is *all* that George said. The evidence cited in support of Defendant's SUF ¶ 21 and Officer Eccles' police report (Defendants' Exhibit D at 38, 43) demonstrate that George conveyed specific information about Plaintiff and Pavlovic to the police before the confrontation in the alley. Accordingly, there is no genuine dispute on this point.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Throughout, Pavlovic was screaming, "Fuck you. This is bullshit. I'm going to fucking sue you." SUF ¶ 24. Meanwhile, Officer Ruiz and Officer Corbett "took [Plaintiff] down to the ground" and Officer Ruiz handcuffed him. SUF ¶¶ 22-23.

Plaintiff admits that the police officers never kicked, struck, punched, or otherwise hit him at any time. SUF ¶ 27. Nonetheless, in the process of the officers forcing Plaintiff to the ground and handcuffing him, Plaintiff sustained some physical injuries to his hand and his lip. SUF ¶ 28. Defendants describe Plaintiff's injuries as "a cut on his hand, a 'small' cut on his lip, and an abrasion to his hand." SUF ¶ 28. Plaintiff disputes this and claims that he suffered "3 separate lacerations to [his] left palm and a cut lip from hitting the ground." SGI ¶ 28. These descriptions of Plaintiff's injuries are nearly identical and do not amount to a material factual dispute.

Defendants assert it is undisputed that "[i]n handcuffing [Plaintiff], SBPD Officers Ruiz and Corbett used a minimal amount of force on [Plaintiff], including grabbing his arm and forcing him on the ground. Officer Eccles had no physical contact with [Plaintiff]." SUF ¶ 26. It is undisputed that Officer Eccles had no physical contact with Plaintiff. Nor does there appear to be a genuine dispute regarding the amount of force used by Officers Ruiz and Corbett. Plaintiff disputes SUF ¶ 26 by claiming, "Neither Ruiz nor Corbett were authorized to use force on the plaintiff, including the takedown." SGI ¶ 26. But whether the officers were legally authorized to use force does not place into dispute the *amount* of force they used.

The various accounts of the amount of force used on Plaintiff are fairly consistent. Officer Corbett's report states that he was responsible for subduing Plaintiff:

> I grabbed on to [Plaintiff's] right shoulder and chest area and told him directly that we were the police and to get on the ground. [Plaintiff] did not comply with our commands . . . . At that point, I grabbed [Plaintiff's] clothing and pulled him forward and down towards the ground. I was able to force [Plaintiff] down on to his belly, where Officer Ruiz and I were able to overcome his resistance and place him in handcuffs. *[Plaintiff] was not physically combative*, but more resistant to our commands, which caused us to have to use physical force in order to get him to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
| --- | --- | --- | --- |
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

comply.

Defendants' Exhibit D at 73 (emphasis added).

Officer Ruiz's report states that he "grabbed [Plaintiff] by the shoulders and tried to pull him down to the ground, by grabbing on to his clothes and pushing him down to the ground. Josfan pulled away from me and I lost my grip on his shirt. . . . I noticed Officer Corbett grabbing on to Josfan and he was able to push him down on the ground. As Josfan went down to the ground, I went on his back and placed both of my knees on his back." Defendants' Exhibit D at 75.

At his deposition, Plaintiff testified that he remembered the officers "grabbing me and throwing me down to the ground . . . ." Defendants' Exhibit A at 27:3-4. Andrew Schoener, an Indochine employee who witnessed Plaintiff's confrontation with the police, claimed in a declaration dated March 28, 2011 that he "saw two men, who later turned out to be undercover Santa Barbara PD officers . . . rush [Plaintiff], and together 'clothesline' him, forcibly taking [Plaintiff] to the ground." Plaintiff's Exhibit C at 1.[6] When Detective Ella interviewed Schoener on February 27, 2008, just over a week after the incident, Schoener said that he "saw [Plaintiff] taken down to the ground and that's it." Plaintiff's Exhibit C at 8.

Plaintiff notes that Officer Corbett testified at his deposition that he and Officer Ruiz "more or less guided [Plaintiff] onto his belly" and that Officer Ruiz testified at his deposition that Officer Corbett, not Officer Ruiz, "pushed [Plaintiff] to the ground". Opposition ("Opp.") at 12. The Court does not base its conclusion on Officer Corbett's

---

[6] Defendants object to Schoener's declaration, claiming that a party cannot create a factual dispute by submitting declarations that contradict the party's own deposition testimony. The Court overrules this objection. Schoener's description of Plaintiff being "clotheslined" does not contradict Plaintiff's testimony that the officers grabbed him and threw him to the ground. The Court also overrules Defendants' hearsay objection to Schoener's declaration. The declaration meets the requirements of Federal Rule of Civil Procedure 56(c)(4) and the Court does not rely on any hearsay statements contained in the declaration.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

deposition testimony on this point, because what matters is that Defendants admit that Officer Corbett and Officer Ruiz grabbed Plaintiff and "forc[ed] him on the ground." SUF ¶ 26.  Thus, Defendants concede they did more than "guide" Plaintiff to the ground.

In sum, there does not appear to be a genuine dispute regarding the fact that Officer Corbett and Officer Ruiz were both involved to some degree in physically forcing Plaintiff to the ground and handcuffing him.  Thus, there is not a genuine dispute regarding the nature and amount of force used.  Although there is a dispute regarding whether the force could be characterized as a "minimal amount" of force, such a characterization or classification is not material to the resolution of this motion.[7]

There *is* a genuine dispute of material fact regarding whether any of the officers ever ordered Plaintiff to get down on the ground, whether Plaintiff immediately complied with any such order, and whether – if any officer did give such an order – Plaintiff had sufficient time to comply before being forced to the ground.  Both Officer Corbett and Officer Ruiz were in plain clothes and it is unclear whether they displayed their badges to Plaintiff or otherwise identified themselves before physically grabbing him.  In Officer Corbett's report, he stated that he "was *not sure* if Officer Ruiz had an opportunity [before grabbing Plaintiff] to display his badge from around his neck that is typically worn under the clothing while on under cover detail."  Defendants' Exhibit D at 73 (emphasis added).  Officer Corbett *was* sure that he "had not had an opportunity to display my badge, however, I grabbed on to Josfan's right shoulder and chest area and told him directly that we were the police and to get on the ground."  Defendants' Exhibit D at 73.  According to Officer Corbett's report, then, both officers may have grabbed Plaintiff before identifying themselves as police officers in any way.  Further, per Officer

---

[7] The Court will not consider the expert report of Van Ness H. Bogardus, III, which Plaintiff disclosed for the first time in opposition to Defendants' motion.  Defendants rightly object to Bogardus's report as untimely.  The Court's Scheduling and Case Management Order set a deadline of December 13, 2010 for initial expert witness disclosures.  Plaintiff did not disclose Bogardus until April 13, 2011.  Mr. Bogardus is offered as an expert in police practices and procedures, with particular experience in use of force, SWAT tactics, and the training of police service dogs.  He opines that Officer Ruiz and Officer Corbett used "unreasonable, unnecessary and excessive" force on Plaintiff.  Plaintiff's Exhibit H at 20.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Corbett's report, he did not give an order to Plaintiff until after he had grabbed Plaintiff.

According to Officer Ruiz's report, he "walked up to" Plaintiff and "identified myself as a police officer. I kept yelling at [Plaintiff] to get on the ground, but he refused. I told him to get down on the ground, but he seemed to be walking away from me. I then grabbed [Plaintiff] by the shoulders and tried to pull him down to the ground . . . ." Defendants' Exhibit D at 75.

According to SUF ¶ 32, "George testified that he saw . . . Plaintiff not immediately comply with the police officers' orders to get down on the ground." This is basically accurate, although (as one would expect) the testimony was slightly more nuanced. George testified at his deposition that Plaintiff "was just looking" and stayed where he was when Officer Eccles entered the alley. Defendants' Exh. C at 7. Plaintiff "was standing still when the second officer [Ruiz] came out." Defendants' Exh. C at 8. George testified that at least one of the officers (it is unclear from his testimony which officer, but from the context it appears to be Officer Eccles) ordered both Plaintiff and Pavlovic to get on their knees. Defendants' Exh. C at 8. After Officer Eccles tasered Pavlovic, Plaintiff's "eyes got big and he got scared and he kind of put his hands up. And then like – but he didn't get down on his knees, he was still standing. And when the other officer [Ruiz] came out, he still wouldn't get down. I think they just like got him down and handcuffed him." Defendants' Exh. C at 8.

Plaintiff testified at his deposition that only four to five seconds elapsed from the time he saw Officer Eccles come into the alley and use his taser device on Pavlovic until the time Officer Ruiz and Officer Corbett threw Plaintiff to the ground. Defendants' Exhibit A at 26:4-6. He claims that he did not know that Officer Ruiz and Officer Corbett were police officers until they were actually handcuffing him, and that he never saw them display badges. Defendants' Exhibit A at 26:12-21; Plaintiff's Exhibit I at ¶ 10. Plaintiff claims that none of the officers gave him any orders before taking him to the ground. Plaintiff's Exhibit I at ¶ 11. Plaintiff's account of the timing is supported by Schoener's declaration, in which Schoener claims that Officer Ruiz and Officer Corbett "[a]lmost instantly" rushed Plaintiff and forcibly took him to the ground. Plaintiff's Exhibit C at 1.

After Plaintiff and Pavlovic were handcuffed, Officer Eccles interviewed George. SUF ¶ 30. According to Officer Eccles' report, George told him that Plaintiff and

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|----------|------------------------|------|------------------|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Pavlovic had been harassing female customers and had refused George's orders to leave Indochine. SUF ¶ 30; Defendants' Exhibit D at 38-39. George also told him that Plaintiff and Pavlovic were belligerent, that Plaintiff pushed George, and that Pavlovic grabbed George's throat. SUF ¶ 30. George signed a form indicating that he intended to place Plaintiff and Josfan under a citizen's arrest for battery and for refusing to leave the premises. SUF ¶ 30. Plaintiff disputes that he ever committed a battery on George, but this does not place in dispute what George told Officer Eccles. SGI ¶ 30. At issue is whether George provided the officers sufficient basis to arrest Plaintiff, not whether George was telling the truth. Plaintiff also notes that when Detective Ella interviewed George after the incident, George did not tell Detective Ella that Plaintiff had struck, pushed, or offensively touched George. SGI ¶ 30. Again, this does not place into dispute what George told Officer Eccles the night of Plaintiff's arrest. Accordingly, the Court treats SUF ¶ 30 as undisputed.

The Santa Barbara County District Attorney's Office charged Plaintiff with trespass and battery. SUF ¶ 38. After reviewing the charges and conducting further investigation, the deputy district attorney assigned to the case, Anthony Davis ("Davis"), initially concluded that the charges were justified and reasonable. SUF ¶ 39. After further investigation and analysis, however, Davis determined that the criminal charges against Plaintiff should be dismissed. SUF ¶ 41. On August 25, 2008, the court hearing the case granted Davis's motion to dismiss the criminal charges against Plaintiff. SUF ¶ 41.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

### B.    Qualified Immunity

Public officials, including police officers, are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). This is the doctrine of qualified immunity, which, where applicable, is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsythe,* 472 U.S. 511, 526,105 S.Ct. 2806 (1985). If the asserted constitutional right was not clear, the officials cannot be liable.

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court stated that in ruling on a summary judgment motion based on qualified immunity, the court must conduct a two-step inquiry. First, the Court must ask: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established" when viewed in the context of the case. *Id.* Although it is defendants who interpose the defense or privilege of qualified immunity, the plaintiff has the burden of proof on these two elements. *See Jeffers v. Gomez*, 267 F.3d 895, 916 (9th Cir. 2001); *Bernstein v. Lopez*, 321 F.3d 903, 905 (9th Cir. 2003).

In *Pearson v. Callahan*, the Supreme Court revisited *Saucier* and held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 129 S.Ct. 808, 818 (2009). The Supreme Court noted that the *Saucier* protocol could be beneficial when it would be difficult to decide whether a right is clearly established without deciding precisely what the right is; when it would be valuable to establish constitutional precedent on questions that do not frequently arise in cases in which a qualified immunity defense is unavailable; and when few judicial resources would be conserved by considering only the "clearly established" prong. *Id.* In all cases, however, district courts must consider the price that comes with the *Saucier* procedure, particularly when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* The scales weigh against

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

considering the first factor when the constitutional question is so fact-bound that a decision would provide little guidance for future cases; when a higher court will soon decide the constitutional question; when a constitutional decision rests on an uncertain interpretation of state law; when the precise factual basis for the plaintiff's claim is hard to identify; and when briefing of constitutional questions is "woefully inadequate." *Id.* at 818-19.

For a right to be "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citation deleted). Supreme Court and Ninth Circuit decisions make clear that the "clearly established" inquiry must be undertaken in a context-specific manner. *Id.*; *Brewster v. Bd. of Educ. of the Lynwood Unified School Dist.*, 149 F.3d 971, 978 (9th Cir. 1998). Thus, "[i]n assessing claims of qualified immunity, reviewing courts must not view constitutional rights in the abstract but rather 'in a more particularized, and hence more relevant, sense.'" *Brewster*, 149 F.3d at 978 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "If officers of reasonable competence could disagree on the issue [whether a chosen course of action is constitutional], immunity should be recognized." *Brewster*, 149 F.3d at 977 (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)). Put more simply, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

The "qualified immunity analysis is 'essentially legal' and is appropriately made on summary judgment where the underlying facts are undisputed." *Franklin v. Fox*, 312 F.3d 423, 437 (9th Cir. 2002) (citation omitted).

## IV.   ANALYSIS

Defendants argue that summary judgment should be granted in their favor on Plaintiff's first cause of action because Defendants are immune from suit under the qualified immunity doctrine. In so arguing, Defendants address only the first prong of *Saucier*. That is, Defendants claim that they did not violate Plaintiff's constitutional rights because they did not use excessive force against Plaintiff, did not falsely arrest or maliciously prosecute Plaintiff, and did not conspire to violate his civil rights. Motion at

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

11.  The Court addresses each claim in turn.

### A.   A Genuine Dispute of Material Fact Exists Regarding Whether Defendants Used Excessive Force Against Plaintiff

"[C]laims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). Courts must devote "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks and citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' *Johnson v. Glick*, 481 F.2d at 1033, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.*

The Ninth Circuit has articulated a three-step analysis for addressing excessive force claims:

> First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted. Second, we analyze the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. At this stage of the analysis, we may also consider other factors, such as the availability of alternative methods of capturing or subduing a suspect. Finally, we weigh the gravity of the intrusion against

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

the government's interest to determine whether the force used was constitutionally reasonable.

*Mattos v. Agarano*, 590 F.3d 1082, 1086 (9th Cir. 2010) (internal quotation marks and citations omitted).

Here, the imposition on Plaintiff's Fourth Amendment right to be free from unreasonable seizures was rather limited and slight, but he did suffer more than an errant "push or shove." *See Connor*, 490 U.S. at 396. It is undisputed that Officer Ruiz and Officer Corbett physically grabbed Plaintiff, forced him to the ground, and handcuffed him. In so doing, the officers caused Plaintiff minor injuries to his face and hand.

As to the government interest at stake, it is undisputed that the crimes at issue were relatively minor. George had accused Plaintiff of trespassing (disturbing customers and refusing to leave Indochine) and a minor battery (shoving George). But the facts are in dispute concerning whether Plaintiff posed an immediate threat to the safety of the

officers or others, whether the officers ever issued an order to Plaintiff, and, if so, whether Plaintiff actively resisted.

Officer Eccles states in his report that while he was dealing with Pavlovic, Plaintiff "stepped forward towards me slightly" and that Plaintiff was "yelling belligerently." Defendant's Exhibit D at 44. Officer Corbett states in his report that he and Officer Ruiz approached Plaintiff "to push him back, away from Officer Eccles" in order "to protect Officer Eccles from [Plaintiff], should he *attempt* to intervene on Pavlovic's behalf." Defendant's Exhibit D at 73 (emphasis added). According to Officer Corbett, Officer Ruiz attempted to pull Plaintiff further away from Officer Eccles, but Plaintiff broke free from Officer Ruiz's grasp. Defendant's Exhibit D at 73. Officer Corbett reports that he then grabbed Plaintiff and pulled him to the ground. Defendant's Exhibit D at 73.

Plaintiff's account, by contrast, essentially suggests that one uniformed police officer and two men in street clothes burst through Indochine's back door and, within a matter of seconds, the men in street clothes had thrown Plaintiff to the ground. ("I'm

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

facing [Pavlovic] and the officer, the first officer that came in.  Next thing I knew some people are grabbing me and throwing me down to the ground . . . .").  It is unclear whether Officer Eccles, Officer Ruiz, or Officer Corbett – the latter two in street clothes and their badges apparently not displayed – ever issued Plaintiff an order that he failed to comply with.  Even if Officer Ruiz or Officer Corbett did issue such an order, the facts are in dispute concerning whether they ever identified themselves as police officers before throwing Plaintiff to the ground.

In the face of these disputed facts, the Court cannot conclude that no jury could reasonably determine that Officer Corbett and Officer Ruiz used excessive force and thereby violated Plaintiff's constitutional rights.  Plaintiff has met his burden of setting out specific facts showing a genuine issue for trial.  Accordingly, a final determination as to whether Officer Corbett and Officer Ruiz are entitled to qualified immunity must await a jury's finding of facts concerning Defendants' use of force.  *See Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("Because [the excessive force balancing test] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment . . . in excessive force cases should be granted sparingly.  This is because police misconduct cases almost always turn on a jury's credibility determinations. This case is no different." (internal citation omitted)).

As to Officer Eccles, however, it is undisputed that he never touched Plaintiff.  Therefore, he cannot have used excessive force against Plaintiff.

Defendants' motion for summary judgment on the excessive force claim in Plaintiff's first cause of action is GRANTED as to Officer Eccles and DENIED as to Officer Corbett and Officer Ruiz.

### B.  Defendants Are Entitled to Partial Summary Judgment on Plaintiff's Malicious Prosecution and False Arrest Claims

Prevailing on a malicious prosecution claim "requires proof that the underlying litigation: (1) was commenced by or at the direction of the defendant and was pursued to a legal determination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.  In addition, the plaintiff must demonstrate resulting

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|----------|------------------------|------|------------------|

| Title | DREW JOSFAN v. INDOCHINE, et al. |
|-------|----------------------------------|

damage by way of attorneys' fees incurred in defense, mental distress, and/or injury to reputation or social standing." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citations omitted).

Under California law, false arrest is "merely one way of committing a false imprisonment." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citation omitted).  The elements of a claim for false imprisonment are "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (internal quotation marks and citation omitted).

Defendants argue that the Court should grant summary judgment in their favor on Plaintiff's false arrest and malicious prosecution claims, because the undisputed facts demonstrate they had probable cause to arrest Plaintiff. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (per curiam) ("To prevail on his § 1983 claim for false arrest and imprisonment, Cabrera would have to demonstrate that there was no probable cause to arrest him.").   Further, to the extent Defendants did not have probable cause when they arrested Plaintiff, they argue that the district attorney's independent decision to file charges against Plaintiff breaks the chain of causation between Defendants' actions and Plaintiff's harm. *Beck v. City of Upland*, 527 F.3d 853, 862 (9th Cir. 2008) ("A prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff.").

Here, Defendants did not have a warrant to arrest Plaintiff, and Plaintiff did not commit any battery in their presence.  Therefore, in the absence of a different criminal violation or exception to the warrant requirement, they could not lawfully arrest him. *Arpin*, 261 F.3d at 920 ("The undisputed facts . . . indicate that [the police officers] arrived after the alleged battery occurred.  The officers could therefore not lawfully arrest [the plaintiff] for the battery.").  In California, however, "a citizen may lawfully make an arrest for a misdemeanor committed in his presence and then may delegate to a law enforcement officer the act of taking the suspect into custody." *Id.*

"In considering whether a citizen's arrest was made, the citizen need not use any

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|----------|------------------------|------|------------------|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

magic words and arrest may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect." *Id.* (internal quotation marks and citation omitted). However, "[i]n establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Id.* at 925; *see also Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009) (no probable cause established where officers executed citizen's arrest without conducting further investigation or obtaining any information beyond citizen's brief statement) (citing to *Arpin*).

Defendants argue that they had probable cause to arrest Plaintiff based on George's citizen arrest complaint, supplemented by their on-scene investigation and their observations of Plaintiff's conduct. Motion at 17. According to Defendants, "[t]he undisputed facts show that George called the police, described offensive and possibly illegal conduct committed by the two men and gave a general description of the men and the clothes that one of them were [*sic*] wearing. Once the police arrived at the bar, [George] corroborated his earlier report, pointed out the suspects, and subsequently signed the citizen's arrest form – and then delegated the task of taking [Plaintiff] into custody." Motion at 18.

In addition to George's statements to the police both before and after they arrived at Indochine, it is undisputed that Gomez spoke to the officers before they confronted Plaintiff:

> Q:    [H]ave you spoken face to face to any Officer to explain why they were summoned?
>
> A:    Yes. As the Officers went out the door the first time, one of the cops said "What's going on?"
>
> Q:    And what did you say?
>
> A:    I said "These two gentleman have been asked to leave repeatedly. One of them exposed themselves. They've

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

> both been pushing against us while I tried to get them to
> leave. They grabbed my manager by the throat. And they
> were trying to restrain both of us from pushing them out."

Defendants' Exhibit B at 10:4-15.

The police reports corroborate the fact that the officers spoke to George and
Gomez before confronting Plaintiff. Officer Eccles's report states that after arriving at
the scene:

> I was . . . informed by the bartender, that the disruptive subjects
> were in the rear portion of the bar. I was then contacted by the bar
> manager, Mike George, who was directing me towards the rear of
> the bar. George told me that there were two belligerent male
> subjects near the rear door and George told me that these two
> subjects had threatened him and assaulted him inside the bar. At
> this time, George was accompanied by another employee, Michael
> Gomez. Gomez also told me that the two involved male subjects
> were extremely belligerent, and that they had just been forced out
> of the rear door of the business and were making verbal threats.

Defendants' Exhibit D at 43.

In addition, the reports of Officer Corbett and Officer Ruiz state that the officers
spoke with the "bartender" and "other night club personnel" about Plaintiff and Pavlovic
before confronting them. *E.g.*, Defendant's Exhibit D at 72 ("Officer Eccles, Officer
Ruiz and I entered the bar and inquired with the bartender about the disturbing party.
The bartender as well as several other night club personnel directed us to the rear of the
establishment. We were advised that [Pavlovic] was wearing a green sweatshirt and had
a shaved bald head."); Defendants' Exhibit D at 74 ("Once inside the bar, we walked up
to the bartender and the bartender informed us that security was in the back patio area
dealing with disturbing subjects. . . . As we got to that location, I noticed that two of the
security guards were excited and had said that the suspects just walked out of the rear
door in to the alleyway. They also pointed at what looked like some type of electronic
equipment, which was knocked down. One of the security guards said that they had just
knocked over the equipment.").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Plaintiff argues that the Defendants did not have probable cause to arrest him because they acted on nothing more than George's on-scene statement to Officer Eccles that, "The two guys I called the police on, we just got them out the back door. One guy hit me in the throat. I got pushed and shoved. They're out there." Opp. at 13. Plaintiff argues that this statement does not provide probable cause to believe Plaintiff committed a battery, because George does not identify which of the "two guys" hit him and shoved him, nor does he explain the circumstances (e.g., whether the hit and shove were intentional, accidental, or possibly done in self-defense). Plaintiff also claims that George's statement does not provide probable cause to believe that Plaintiff committed a trespass, which requires that a person intentionally interfere with a business by obstructing or intimidating those attempting to carry on the business, or its customers, and refusing to leave when asked. Cal. Pen. Code § 602.1(a). Plaintiff argues that it is "[u]ndisputed . . . that neither Eccles nor any other officer defendant communicated further with Mike George, Mike Gomez or anyone else before knocking plaintiff down and seizing him without probable cause." Opp. at 15.

Plaintiff is mistaken. As the facts cited above demonstrate, the officers reported to Indochine because of George's initial call, then spoke to George *and* Gomez, as well as other Indochine employees, before confronting Plaintiff and Pavlovic. George confirmed the details of his earlier call and Gomez corroborated George's claims. Both then identified where Plaintiff and Pavlovlic were located and led the officers to them. Taken together, these facts demonstrate that the officers had sufficient probable cause to arrest Plaintiff and Pavlovic for trespass and battery before they entered the alley. After the officers had forcibly subdued and detained Pavlovic and Plaintiff, Officer Eccles spoke to George again. George provided more detail about the incident and formally stated that he wished to perform a citizen's arrest. Plaintiff disputes the *truth* of what George and Gomez told the officers, but that does not affect the probable cause analysis. Plaintiff also points to portions of George's testimony and Gomez's testimony in which they do not provide a full account of what they told the officers before the officers arrested Plaintiff. But these portions of testimony do not contradict the other portions of their testimony in which George and Gomez provide a fuller description of what they told the officers.

Defendants have carried their burden of establishing probable cause existed to arrest Plaintiff, and Plaintiff has failed to demonstrate a genuine dispute as to any of the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|----------|------------------------|------|------------------|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

facts relied upon by Defendants.  Because Defendants have established that they had probable cause to arrest Plaintiff, they cannot be liable for false arrest or malicious prosecution.  Accordingly, they did not violate Plaintiff's constitutional rights by arresting Plaintiff for trespass and battery, and there is no need to reach the second step of the *Saucier* qualified immunity analysis.  Defendants' motion for summary judgment is GRANTED as to the false arrest and malicious prosecution claims in Plaintiff's first cause of action.

### C. Defendants Are Entitled to Summary Judgment on Plaintiffs Claim That They Conspired with George and Gomez to Violate His Civil Rights

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights.  Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants.  To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotation marks and citations omitted).

/ / /

/ / /

As relevant to the conspiracy claim in Plaintiff's first cause of action, he alleges in the FAC that:

Corbett and Ruiz, in plain clothing, unjustly and without cause assaulted and seized Plaintiff at the rear on [*sic*] Indochine in the presence and fill [*sic*] view of defendants Eccles, Gomez and George.  Eccles, Gomez and George thereupon entered into a conspiracy to violate the plaintiff's rights against unreasonable seizures and groundless criminal accusations by agreement to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

> conceal the wrongful conduct of Corbett and Ruiz by fabricating
> allegations that George made Plaintiff's arrest for allegedly
> trespassing on the premises of Indochine . . . . Pursuant to this
> agreement and meeting of minds, Plaintiff was arrested . . . .

FAC ¶ 7.

Defendants shift the burden of proof to Plaintiff by pointing to what they characterize as a lack of evidence in the record that they "shared a common objective with Indochine employees, George and Gomez, or anyone, to violate Josfan's constitutional rights." Motion at 21. In response, Plaintiff glibly argues that "even the dearly departed Ray Charles could not miss the evidence of corrupt collusion and conspiracy here." Opp. at 20. Nonsense. The undisputed evidence demonstrates that the officers had probable cause to arrest Plaintiff for trespass and battery.

Plaintiff's theory regarding a conspiracy to commit false arrest and malicious prosecution is premised on the notion that the officers forcibly subdued and detained Plaintiff without any concrete basis to do so, and then colluded with the Indochine employees to fabricate a post-hoc justification for their use of force. According to Plaintiff, this collusion ultimately led to his arrest and prosecution. What Plaintiff overlooks, however, is that George and Gomez made statements to the officers *before* they detained Plaintiff, and these statements are completely consistent with their statements *after* Plaintiff's seizure. Thus, there is not even circumstantial evidence of a conspiracy to "fraudulently justify plaintiff's seizure". FAC ¶ 13. Therefore, Defendants could not have conspired with respect to Plaintiff's arrest and prosecution.

Moreover, although in one rather narrow respect there is a genuine dispute of fact regarding the reasonableness of the officers' use of force, even if a jury were to resolve that dispute in Plaintiff's favor (unlikely), it could not reasonably conclude that the post-arrest accounts and testimony of Defendants George, and Gomez – portraying the use of force as reasonable and justified – is circumstantial evidence of an agreement between those parties to violate Plaintiff's Fourth Amendment right to be free from unreasonable seizures. George and Gomez merely reiterated the gist of what they had said before the altercation involving the police and Plaintiff began.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Accordingly, Plaintiff has not met his burden of demonstrating a genuine dispute of material fact regarding whether the Defendants engaged in a conspiracy and thereby violated Plaintiff's constitutional rights.

## V.     CONCLUSION

Based on the foregoing, the Court GRANTS Defendants' motion for summary judgment in part and DENIES it in part.  The Court grants the motion on Plaintiff's excessive force claim as to Officer Eccles and denies the motion as to Officer Corbett and Officer Ruiz.  The Court grants the motion on Plaintiff's wrongful arrest and malicious prosecution claim.  The Court grants the motion as to the conspiracy claim.

IT IS SO ORDERED.

_____ : _____

Initials of Preparer                SMO