O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:         Attorneys **NOT** Present for Defendants:

**Proceedings:**        IN CHAMBERS (No Proceedings Held)

     This matter is before the Court on the motion for summary judgment or, in the alternative, partial summary judgment filed by Mike George ("George"), Michael Gomez ("Gomez"), and Nylon Project LLC ("Indochine") (collectively "Defendants"). Defendants argue the Court should grant summary judgment in their favor on all of the causes of action implicating them. For the reasons set forth below, the Court GRANTS the motion.[1]

## I.   INTRODUCTION

     On October 29, 2009, Plaintiff filed his original complaint alleging various causes of action arising from his arrest at the Indochine nightclub in Santa Barbara, California. Plaintiff sued Defendants, as well as Santa Barbara Police Department Officers Thomas Eccles ("Officer Eccles"), Ed Ruiz ("Officer Ruiz"), and Mark Corbett ("Officer Corbett"), and the City of Santa Barbara. On April 19, 2010, Plaintiff filed the first amended complaint ("FAC"), which is the operative complaint. The FAC added Nylon Project LLC (doing business as Indochine) as a defendant. On February 22, 2011, pursuant to stipulation, the Court dismissed the claims against defendants the City of Santa Barbara and the City of Santa Barbara Police Department and dismissed Plaintiff's cause of action for *Monell* liability. On March 23, 2011, again pursuant to stipulation, the Court dismissed Plaintiff's causes of action for false arrest and negligent employment, and dismissed the allegations of false arrest in Plaintiff's cause of action for conspiracy.

---

[1] Docket No. 68.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Defendants seek summary judgment in their favor on the first cause of action for violation of 42 U.S.C. section 1983, the fourth cause of action for conspiracy to commit malicious prosecution, the fifth cause of action for torts in essence, the sixth cause of action for intentional infliction of emotional distress, the seventh cause of action for negligence, and the ninth cause of action for violation of the Unruh Act and the Bane Act.

## II.   FACTS

The following facts are undisputed, unless otherwise noted.[2]  On February 28, 2008, Plaintiff was attending a community policing seminar in Santa Barbara, California in connection with his job as a deputy district attorney for the County of Los Angeles. Statement of Undisputed Facts ("SUF") ¶ 1.  Plaintiff met Dusan Pavlovic ("Pavlovic"), another attendee, during the seminar's first day.  SUF ¶ 2.  At some point that day, a group of seminar attendees, including Plaintiff and Pavlovic, decided to meet at a local café at around 6 p.m. to watch a Los Angeles Lakers basketball game.  SUF ¶ 3.  Plaintiff drank four martinis at the café.  SUF ¶ 5.  He also drank a "shot" of alcohol, but he isn't sure whether he consumed the shot at the café or at another bar later in the evening.  SUF ¶ 6.  The group left the café around 10:00 p.m. and went to a bar, where Plaintiff had another drink.  SUF ¶¶ 7-8.

After passing about 20 minutes at the second bar, Plaintiff and Pavlovic decided to leave and go to Indochine.  SUF ¶ 9.  Sometime after arriving at Indochine, Plaintiff went into the bathroom and telephoned a friend.  SUF ¶ 10.  Plaintiff then went looking for Pavlovic and found him in an outdoor area of the nightclub.  SUF ¶ 11.  Pavlovic handed Plaintiff a drink and then, within seconds, Gomez (Indochine's "bouncer") approached

---

[2] If the Court has not included a proffered fact, it has not needed to rely upon that fact for its decision.  Defendants largely have set forth the same facts (numbered identically) as those set forth by Officer Eccles, Officer Ruiz, and Officer Corbett in their separately-filed motion for summary judgment. (Dkt. 60.)  Accordingly, the facts in this order closely track those in the Court's order on those officers' motion.  For purposes of clarity and brevity, the Court will occasionally refer to the officers as the "Santa Barbara Defendants" and will rely on its reasoning in its order on the officers' motion as a basis for reaching its conclusions on this motion.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Plaintiff and told him that Plaintiff had to get Pavlovic out of the bar. SUF ¶ 12. Meanwhile, George (Indochine's manager) called the Santa Barbara Police Department to report an ongoing disturbance involving Plaintiff and Pavlovic. SUF ¶ 16. George gave physical descriptions of two men, who George reported were harassing female customers and refusing to leave the nightclub. SUF ¶ 16. Plaintiff does not dispute that George made this report, but does dispute that he ever harassed female customers or refused to leave Indochine. *E.g.*, SGI ¶ 36, 37, 42-45. There is a genuine dispute concerning whether Plaintiff engaged in the behavior George described.

     Plaintiff claims that he was standing between Gomez and Pavlovic as Gomez started shoving them toward the back door of the bar. SUF ¶¶ 13-15. While this was happening, Pavlovic started saying, "We're DAs, we're DAs." SUF ¶ 13. Pavlovic also reached over Josfan to grab Gomez. SUF ¶ 13. It is undisputed that Gomez was involved in pushing Plaintiff and Pavlovic out of Indochine and into the alley behind the nightclub. SUF ¶ 17. Plaintiff asserts that George and two other men aided Gomez. Plaintiff's Separate SUF ¶ 2. This dispute is irrelevant for purposes of this motion. After the door closed behind them, Pavlovic pounded on the door and repeatedly shouted, "This is fucking bullshit." SUF ¶ 18. Plaintiff yelled at Pavlovic to explain to him why they had been thrown out of Indochine. SUF ¶ 19.

     While Plaintiff and Pavlovic remained in the alley behind Indochine, Officer Eccles, Officer Ruiz, and Officer Corbett arrived at the nightclub in response to George's call. SUF ¶ 21. George testified at his deposition that he told Officer Eccles, "The two guys I called the police on we just got them out the back door. One guy hit me in the throat. I got pushed and shoved. They're out back." SUF ¶ 21. According to Officer Eccles's report, before the officers entered the alley, George told him "that two belligerent male subjects had threatened and assaulted him and had refused to leave the bar." Santa Barbara Defendants' Exhibit D at 38.[3] Plaintiff does not dispute that George

---

    [3] The Court overrules Plaintiff's hearsay objection to the police reports in Defendants' Exhibit D and Exhibit F. A police officer's statements and observations recorded in a police report are admissible in civil cases under the public-records hearsay exception contained in Federal Rule of Evidence 803(8). *See Lang v. Cullen*, 725 F. Supp. 2d 925, 960 (C.D. Cal. 2010) (Morrow, J.) ("[T]o the extent the police reports record the out-of-court statements of [the authors of the reports], they are admissible.");

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

so testified at his deposition, but Plaintiff does dispute that he ever offensively touched George, and disputes that George actually made such a statement to Officer Eccles on the night of the incident. SGI ¶ 21; Plaintiff's SUF ¶ 1; Plaintiff's Exh. I at ¶ 7 ("At no time did I strike, punch, hit, push or otherwise touch Michael George in any manner, let alone offensively. There was absolutely no basis for him to have claimed I battered him or refused to leave Indochine.").

      The truth of George's statement to Officer Eccles rests on a credibility determination that is not appropriate for summary judgment. Whether George even made this statement is another matter. In support of his contention that George did not make this statement to Officer Eccles, Plaintiff cites to Gomez's deposition testimony that he did not recall seeing George speak to the officers before the officers went into the alley to find Plaintiff and Pavlovic. Plaintiff's Exhibit E at 131:4-13.

      The mere fact that Gomez could not recall at his deposition whether he had seen George speak to the police – as opposed to Gomez affirmatively denying that George spoke to the police – is not sufficient evidence to create a genuine dispute.

      Plaintiff also cites to George's interview with Santa Barbara Police Department Detective Ella, who conducted a follow-up investigation. George told Detective Ella, "I could see flashlights in the hallway and I knew it was the police. So I ran out and I said, hey, they're in the back. So we all ran back here. I opened the door for the cops." Plaintiff's Exhibit B at 5:12-16. This evidence actually corroborates that George spoke to

---

*United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted . . . ."). Plaintiff also objects to the statements of third persons recorded in the police reports as hearsay within hearsay. The Court overrules this objection. The Court is not relying on these statements for their truth. Rather, the statements are being considered for their effect on others (e.g., to explain why the police officers arrested Plaintiff and why the Santa Barbara County District Attorney chose to file criminal charges against Plaintiff). The statements are admissible for this limited purpose. *See Lang*, 725 F. Supp. 2d at 960 ("The [police] reports contain hearsay statements by [a third party] . . . which are inadmissible unless an exception to the hearsay rule applies or they are being offered for a non-hearsay purpose.").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

the police before they confronted Plaintiff and Pavlovic.  Further, George's statement to Detective Ella that George told the police, "[H]ey, they're in the back" is consistent with his later deposition testimony that he told the police, "They're out back."  That George did not relate to Detective Ella everything he told the officers before they entered the alley does not create a genuine dispute.  This is particularly true because George's

deposition testimony does not contradict his earlier statement to Detective Ella.  Thus, the Court treats SUF ¶ 21 as undisputed.[4]

     Gomez also testified at his deposition that he spoke to the officers before they entered the alley for the first time, and told them,"These two gentleman have been asked to leave repeatedly.  One of them exposed themselves.  They've both been pushing against us while I tried to get them to leave.  They grabbed my manager by the throat.  And they were trying to restrain both of us from pushing them out."  Santa Barbara Defendants' Exhibit B at 10:10-15.  In contrast, Plaintiff claims that Gomez said nothing more to the officers than, "They're out here."  SGI ¶ 31; Plaintiff's Exhibit D at 131.  But the portion of Gomez's deposition testimony relied upon by Plaintiff does not contradict Gomez's fuller testimony later in the same deposition, and so does not create a genuine dispute as to what Gomez told the officers before they entered the alley for the first time.

     Officer Eccles, who was wearing a uniform, was the first officer who stepped through Indochine's back door and into the alley.  SUF ¶ 22.  Officer Ruiz and Officer Corbett, both of whom were in plain clothes, followed Officer Eccles into the alley.  SUF ¶ 22; Santa Barbara Defendants' Exhibit D at 43.  Defendants claim that Officer Eccles ordered Plaintiff *and* Pavlovic to lie on the ground.  SUF ¶ 22.  George testified at his deposition that Plaintiff did not immediately comply with Officer Eccles' order to get on

---

[4] Plaintiff's SUF ¶ 3 states, "When Officer Eccles entered Indochine, George said nothing more than, 'Hey, they're in the back' to Eccles before Gomez, George and Schoener followed Eccles into the alley."  The evidence does not support that this is *all* that George said.  The evidence cited in support of Defendant's SUF ¶ 21 and Officer Eccles' police report (Defendants' Exhibit D at 38, 43) demonstrate that George conveyed specific information about Plaintiff and Pavlovic to the police before the confrontation in the alley.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

the ground. SUF ¶ 32.[5] Although Plaintiff does not dispute SUF ¶ 22, Plaintiff avers that none of the officers issued an order to Plaintiff at any time before he was thrown to the ground and handcuffed. SGI ¶ 32. Thus, the Court treats SUF ¶¶ 22 and 32 as

disputed only with respect to whether any officer specifically ordered not just Pavlovic but also Plaintiff to the ground.

Pavlovic said, "This is bullshit" and did not comply with Officer Eccles' order. SUF ¶ 21. Officer Eccles eventually shot Pavlovic with his taser device and subdued Pavlovic. SUF ¶ 22. Throughout, Pavlovic was screaming, "Fuck you. This is bullshit. I'm going to fucking sue you." SUF ¶ 24. Meanwhile, Officer Ruiz and Officer Corbett "took [Plaintiff] down to the ground" and Officer Ruiz handcuffed him. SUF ¶¶ 22-23. Officer Eccles had no physical contact with Plaintiff. SUF ¶ 26.

Plaintiff admits that the police officers never kicked, struck, punched, or otherwise hit him at any time. SUF ¶ 27. Nonetheless, in the process of the officers forcing Plaintiff to the ground and handcuffing him, Plaintiff sustained some physical injuries to his hand and his lip. SUF ¶ 28. Defendants describe Plaintiff's injuries as "a cut on his hand, a 'small' cut on his lip, and an abrasion to his hand." SUF ¶ 28. Plaintiff disputes this and claims that he suffered "3 separate lacerations to [his] left palm and a cut lip from hitting the ground." SGI ¶ 28. These descriptions of Plaintiff's injuries are nearly identical and do not amount to a material factual dispute.

After Plaintiff and Pavlovic were handcuffed, George signed a form indicating that he intended to place Plaintiff and Josfan under a citizen's arrest for battery and for refusing to leave the premises. SUF ¶ 30. George never told Plaintiff that he was under citizen's arrest. SUF ¶ 30. Defendants assert that "[O]fficer Eccles arrested [Plaintiff] based on the citizen's arrest by George." SUF ¶ 31. Plaintiff disputes this, claiming that he "was seized and arrested by Ruiz and Corbett and booked at Eccles' direction after obtaining Mike George's signature on Eccles' arrest report." SGI ¶ 31. This is not a

---

[5] Although George does not clearly state which officer supposedly issued this order to Plaintiff, from the context of his surrounding testimony, it appears to have been Officer Eccles. *See* Santa Barbara Defendants' Exhibit Exh. C at 7-8.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

material dispute for purposes of deciding this motion.[6]

In the week following Plaintiff's arrest, Detective Ella interviewed numerous witnesses who were at Indochine on the night of Plaintiff's arrest and prepared a report that he requested be sent to the Santa Barbara County District Attorney's Office for review. SUF ¶¶ 33-34. Gomez told Detective Ella that he had witnessed Pavlovic place his hand on a woman's breast and expose himself. SUF ¶ 35. According to Gomez, Plaintiff saw this behavior and was laughing and slapping Pavlovic on the back. SUF ¶ 37. Plaintiff does not dispute that Gomez told this to Detective Ella, but he does dispute that these events actually took place. SGI ¶ 35-37. The Court treats SUF ¶¶ 35-37 as undisputed only as to whether Gomez told the police this had occurred.

The District Attorney's Office initially charged Plaintiff with trespass and battery. SUF ¶ 38. After reviewing the charges and conducting further investigation, the deputy district attorney assigned to the case, Anthony Davis ("Davis"), initially concluded that the charges were justified and reasonable. SUF ¶ 39. After further investigation and analysis, however, Davis determined that the criminal charges against Plaintiff should be dismissed. SUF ¶ 41. On August 25, 2008, the court hearing the case granted Davis's motion to dismiss the criminal charges against Plaintiff. SUF ¶ 41. After the dismissal, Plaintiff filed a petition for a determination of factual innocence. SUF ¶ 47. Davis agreed to the petition on the battery charge. SUF ¶ 47. Davis did not oppose the petition on the trespass charge, but the court denied Plaintiff's petition on that charge. SUF ¶ 47.

### III. LEGAL STANDARD

---

[6] As discussed in the Court's order on the Santa Barbara Defendants' motion, a citizen need not use any "magic words" to effect a citizen's arrest. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 920 (9th Cir. 2001) ("In considering whether a citizen's arrest was made, the citizen need not use any magic words and arrest may be implied from the citizen's act of summoning an officer, reporting the offense, and pointing out the suspect." (internal quotation marks and citation omitted)). Officer Ruiz and Officer Corbett may have technically "arrested" Plaintiff (in the sense that they physically restrained Plaintiff and handcuffed him), but Plaintiff's formal arrest on charges of trespass and battery occurred at George's behest, based on probable cause supplied primarily by George.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

### A.     Summary Judgment

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then

shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV. ANALYSIS

Defendants seek summary judgment in their favor on the first cause of action for violation of 42 U.S.C. section 1983, the fourth cause of action for conspiracy to commit malicious prosecution, the fifth cause of action for torts in essence, the sixth cause of action for intentional infliction of emotional distress, the seventh cause of action for negligence, and the ninth cause of action for violation of the Unruh Act and the Bane Act. The Court addresses each in turn.

### A. Defendants Are Entitled to Summary Judgment on the Claim That They Conspired with Officer Eccles, Officer Ruiz, and Officer Corbett to Violate Plaintiff's Civil Rights in Violation of 42 U.S.C. § 1983

Establishing a claim under 42 U.S.C. section 1983 requires proof that a person acting under color of state law violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "A private individual may be liable under § 1983 if she conspired or entered into joint action with a state actor." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Defendants argue that judgment should be entered in their favor on this claim because they are not state actors and there is no probative evidence sufficient to establish that they entered into a conspiracy with Officer Eccles, Officer Ruiz, and Officer Corbett to violate Plaintiff's civil rights. Defendants also argue that Indochine itself cannot be liable, because federal law does not recognize respondeat superior liability in section 1983 actions. Plaintiff concedes that Defendants are not state actors, but argues that there is ample evidence that they entered into a conspiracy with Defendants.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights. Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotation marks and citations omitted).

As relevant to the conspiracy claim in Plaintiff's first cause of action, he alleges in the FAC that:

> Corbett and Ruiz, in plain clothing, unjustly and without cause assaulted and seized Plaintiff at the rear on [*sic*] Indochine in the presence and fill [*sic*] view of defendants Eccles, Gomez and George. Eccles, Gomez and George thereupon entered into a conspiracy to violate the plaintiff's rights against unreasonable seizures and groundless criminal accusations by agreement to conceal the wrongful conduct of Corbett and Ruiz by fabricating allegations that George made Plaintiff's arrest for allegedly trespassing on the premises of Indochine . . . . Pursuant to this agreement and meeting of minds, Plaintiff was arrested . . . .

FAC ¶ 7.

Plaintiff argues that he "does not rest his joint action claim on the Indochine defendants merely because Indochine telephoned the Santa Barbara PD or that George and Gomez lied to Eccles about [Plaintiff]." Opposition ("Opp.") at 11. Rather:

> Eccles, Ruiz and Corbett needed George's [sic] arrest. George and Gomez needed the officers to extricate themselves from their hasty overreaction as to Josfan. There is sufficient evidence of a meeting of minds among them to provide the facts that warrant a

Case 2:09-cv-07904-AHM-PLA   Document 85   Filed 01/13/12   Page 11 of 20   Page ID #:1434

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

>   forcible take down which depended on facts from the Indochine
>   defendants that plaintiff had committed the two offenses knowing
>   those facts to be untrue.

Opp. at 11.  Plaintiff's conspiracy theory, at least as it relates to his false arrest and malicious prosecution claims, rests on the notion that George and Gomez communicated to the officers virtually nothing about Plaintiff's conduct before the officers forcibly subdued and handcuffed Plaintiff, and only *after* witnessing this did George and Gomez fabricate their more detailed accounts of Plaintiff's actions.  According to Plaintiff, these post-hoc fabrications led to Plaintiff's arrest and prosecution.  But the undisputed evidence is contrary to this theory, as discussed above in connection with SUF ¶ 21.

    In fact, it is undisputed that both George and Gomez spoke to at least one of the officers before the officers confronted Plaintiff in the alley, and described Plaintiff committing a battery and a trespass.  *See, e.g.*, Gomez's deposition testimony, Santa Barbara Defendants' Exhibit B at 10:10-15 ("These two gentleman have been asked to leave repeatedly.  One of them exposed themselves.  They've both been pushing against us while I tried to get them to leave.  They grabbed my manager by the throat.  And they were trying to restrain both of us from pushing them out.").

    As the Court concluded in its order on the Santa Barbara Defendants' motion, the officers had probable cause to arrest Plaintiff, and there is no evidence of a meeting of Defendants' minds to fabricate the basis for such probable cause.  Plaintiff claims that "[n]either Gomez or George offers a stitch of admissible proof that [Plaintiff] battered, shoved, pushed or otherwise offensively and unlawfully touched George so as to violate California Penal Code § 242."  Opp. at 9.  This is beside the point.  Plaintiff has not created a genuine dispute of material fact concerning what George and Gomez told the officers, and regardless whether what they told the officers was in fact true, it clearly provided probable cause for the officers to arrest Plaintiff.

    As to the nexus between the alleged conspiracy and Plaintiff's excessive force claim, the Court found in its companion order on the Santa Barbara Defendants' motion that in one limited respect there is a genuine dispute of material fact concerning whether Officer Ruiz and Officer Corbett used excessive force when they seized Plaintiff.  If a jury finds the officers actually used excessive force, then could the fact that later on the

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

officers and Defendants both portrayed the use of force as minimal, reasonable, and justified be viewed as circumstantial evidence they had an agreement to violate Plaintiff's Fourth Amendment right to be free from unreasonable seizures? The answer is "no." As this Court found in its companion ruling on the officers' summary judgment motion, "George and Gomez merely reiterated the gist of what they had said before the altercation involving the police and Plaintiff began."

Even if this conclusion about George and Gomez not being liable for conspiring to subject Plaintiff to excessive force were incorrect, Indochine could not be liable for this violation. Contrary to Plaintiff's argument, a private party may not be held vicariously liable for a section 1983 violation. *Tater-Alexander v. Amerjan*, 2008 WL 961233, *12 (E.D. Cal. April 8, 2008) ("[C]ourts which have considered the question have concluded that . . . a private corporation is not vicariously liable under a theory of respondeat superior for the constitutional torts of its employees . . . .") (collecting cases); *Robinson v. City of San Bernardino Police Dept.*, 992 F. Supp. 1198, 1205 (C.D. Cal. 1998) (Tevrizian, J.) ("Although *Monell* involved a municipal corporation, it has been extended to private corporations, as well.") (collecting cases); *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010) ("A private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." (internal quotation marks and citation omitted)); Martin A. Schwartz, Section 1983 Litigation Claims and Defenses § 6.04 (4th ed. 2003) ("Lower federal courts have consistently ruled that private parties who act under color of state law may not be held liable on the basis of respondeat superior.") (collecting cases).

Accordingly, Defendants have met their burden of showing an absence of evidence as to Plaintiff's cause of action for a violation of section 1983. Thus, Defendants' motion is GRANTED on all aspects of Plaintiff's section 1983 claim.

**B. Defendants Are Entitled to Summary Judgment on Plaintiff's State Law-Based Cause of Action For Conspiracy**

In addition to Plaintiff's claim that Defendants conspired with the Santa Barbara Defendants in violation of section 1983, Plaintiff brings a state law cause of action for civil conspiracy against the Defendants. He alleges that they "combined and agreed to . . . maliciously prosecute Plaintiff on criminal charges they knew to be untrue" and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

"fabricated a story to give the appearance of lawful behavior by Defendants, intentionally misleading the Santa Barbara District Attorney's officer." FAC ¶¶ 31-32.

    Under California law, the elements of a conspiracy are: "(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts. The *sine qua non* of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." *Schick v. Lerner*, 193 Cal. App. 3d 1321, 1327-28 (1987) (internal citation omitted).

    Here, the alleged wrongful act is malicious prosecution. Prevailing on a malicious prosecution claim "requires proof that the underlying litigation: (1) was commenced by or at the direction of the defendant and was pursued to a legal determination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice. In addition, the plaintiff must demonstrate resulting damage by way of attorneys' fees incurred in defense, mental distress, and/or injury to reputation or social standing." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citations omitted).

    As framed by Plaintiff, the supposed conspiracy between George and Gomez began *after* they witnessed Officer Ruiz and Officer Corbett forcibly seize Plaintiff in the alley behind Indochine. As Plaintiff admits, "Because neither [George nor Gomez] actually arrested the plaintiff, in the sense he was seized and handcuffed by others, there is no proof that they colluded in advance to physically seize the plaintiff but had they been truthful to the officers on scene, [Plaintiff] would have to have been released and not booked. Likewise, had they been truthful [Plaintiff] could never have been subjected to a groundless criminal prosecution. It is this tort which the conspiracy alleged centers upon . . . ." Opp. at 18. That Plaintiff argues he "would have been released" had Defendants been truthful (rather than arguing he would not have been seized in the first place) only emphasizes his theory that the officers seized him *before* George and Gomez supposedly conspired to lie to the officers.

    Thus, Plaintiff's claim that George and Gomez conspired to commit malicious prosecution fails for the same reason that his section 1983 malicious prosecution conspiracy claim fails. Plaintiff's theory is dependent on the notion that George and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

Gomez told the officers virtually nothing about Plaintiff's behavior before the officers seized Plaintiff. Then, only *after* witnessing Plaintiff's seizure, did George and Gomez fabricate their story concerning Plaintiff's alleged battery and trespass. According to Plaintiff, George and Gomez lied to the officers both to give themselves cover for hastily throwing Plaintiff out of Indochine, and to justify the officers' seizure of Plaintiff. As discussed above, the undisputed evidence is contrary to this theory. In fact, statements from George and Gomez to the officers *before* Plaintiff's seizure are consistent with their statements *after* his seizure. There is no evidence of a post-hoc fabrication.

Defendants correctly argue that "the evidence is uncontroverted that Plaintiff was arrested based on conduct observed *and reported* to the police *before* Plaintiff's Constitutional rights allegedly were violated [which violation Plaintiff alleges prompted the conspiracy's formation] and before the purported conspirators had ever met, Plaintiff's conspiracy claim fails as a matter of law." Reply at 12 (emphasis added).

### C. Defendants Are Entitled to Summary Judgment on Plaintiff's "Torts In Essence" Claim

Plaintiff alleges that Defendants are liable because they "owed to Plaintiff non-consensual duties set forth in California Penal Code Sections 118 (perjury), 118.1 (false police report), 148.5 (false report of a crime), 134 (preparing false evidence), 132 (offering false evidence), 127 (subornation of perjury), 137 (induce false testimony), 182(1) (conspiracy to commit crime), and 182(2) (conspiracy to obstruct justice)" and breached these duties, thereby damaging Plaintiff. FAC ¶¶ 36-38.

The Court grants summary judgment on these claims because the cited penal code sections create no "non-consensual duties" and do not create a private right of action. *Willis v. City of Los Angeles*, 57 Fed. Appx. 283, 289 (9th Cir. 2002) ("Willis challenges the summary judgment dismissing his claim that the appellees committed 'torts in essence' by breaching duties that they owed him under fourteen California Penal and Vehicle Code provisions concerning such matters as perjury, California Penal Code § 118; filing false police reports, California Penal Code § 118.1; offering false evidence, California Penal Code § 132; battery, California Penal Code § 242; and reckless driving, California Vehicle Code § 23103. The district court properly granted summary judgment

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

to the appellees, finding that the statutes cited do not create private rights of action."); *Hillblom v. County of Fresno*, 539 F. Supp. 2d 1192, 1212 (E.D. Cal. 2008) (Citing to *Willis* and dismissing torts in essence cause of action because "Plaintiffs fail to demonstrate how their cited California Penal Code sections create private rights of action . . . . Defendant[s] correctly note that plaintiffs offer no authority that the cited California Penal Code sections mandate a duty on defendants to support a tort claim.").

> **D.   Defendants Are Entitled to Summary Judgment on Plaintiff's Cause of Action For Intentional Infliction of Emotional Distress**

The elements for a claim of intentional infliction of emotional distress under California law are: (1) "extreme and outrageous conduct by the defendant; . . . (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *King v. AC & R Advertising*, 65 F.3d 764, 769 (9th Cir. 1995). As the court explained in *King*, "Summary judgment is proper if a claim cannot reasonably be regarded as so extreme and outrageous as to permit recovery. Conduct, to be outrageous,

must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id.* at 770 (internal quotation marks and citations omitted).

In support of his cause of action for intentional infliction of emotional distress ("IIED"), Plaintiff argues that there is evidence demonstrating that Plaintiff "was attacked, booked and falsely accused of crimes he did not commit. It matters not that they were petty misdemeanors, they were crimes nonetheless and particularly injurious to a person in Plaintiff's position." Opp. at 23.

The Court has already concluded that the Defendants in this action are not liable for conspiring to commit malicious prosecution, which is central to Plaintiff's IIED claim. Plaintiff also references that he was "attacked." Setting aside the merits of that accusation, Plaintiff does not allege that George and Gomez attacked Plaintiff, nor that they somehow intended to cause the officers to subject Plaintiff to severe emotional distress.

No evidence supports Plaintiff's cause of action for IIED, and Plaintiff has failed

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

to proffer any evidence creating a genuine dispute of material fact on this claim. Accordingly, Defendants are entitled to summary judgment.

### E. Defendants Are Entitled to Summary Judgment on Plaintiff's Cause of Action For Negligence

Plaintiff alleges that Defendants "breached the duty of care owed to Plaintiff in that Defendants negligently subjected Plaintiff to the unlawful seizure of his person, to false arrest and to a groundless criminal prosecution, though Defendants and each of them knew, or in the exercise of reasonable care should have known, there was no offense committed by the [P]laintiff." FAC ¶ 46.

Defendants argue that this "cause of action seemingly alleges that the Indochine Defendants negligently falsely arrested Josfan and negligently subjected him to a baseless prosecution." Opp. at 19. Defendants assert that Plaintiff is attempting to create "a new tort of negligent arrest or negligent malicious prosecution." Opp. at 19. Finally, Defendants argue that Plaintiff's claim is barred by the absolute privilege of California Civil Code § 47.

In opposition, Plaintiff argues that he "is not asserting a theory of negligent arrest or prosecution. His negligence claim rests on the breach of duty owed to him by George, Gomez and Indochine to prevent [Plaintiff] from being injured by their carelessness. The breach of this duty is most apparent in their rush to judgment linking Plaintiff to Pavlovic's bad behavior. Negligence is demonstrated by the defendants failure to sort out and distinguish [Plaintiff's] presence from whatever defendants might have believed about Pavlovic." Opp. at 24.

The facts are in dispute concerning whether Plaintiff engaged in any of the behavior that Defendants described to the officers. Indeed, Plaintiff was found to be factually innocent of the battery charge. Given this, it is possible, as Plaintiff alleges, that Defendants breached some unspecified duty of care by erroneously concluding that Plaintiff had engaged in certain behavior and reporting such to the police. Even if that were true, however, a negligence claim founded on their statements is barred by Civil Code section 47.

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

California Civil Code section 47(b), provides an absolute privilege for a communication made in any "(1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law." Cal Civ Code § 47(b). The California Supreme Court has held that "when a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication also enjoys an unqualified privilege under section 47(b)." *Hagberg v. California Federal Bank*, 32 Cal. 4th 350, 364 (2004). This privilege extends to all tort actions except those for malicious prosecution. *Id.* at 358.

Plaintiff's negligence claim is clearly based on Defendants' communications to law enforcement describing his alleged behavior in Indochine. Had Defendants not made those communications, Plaintiff would not have been seized, arrested, and prosecuted. Plaintiff cannot frame a negligence claim without incorporating these communications, because but for these communications, the police would not have become involved and he would not have allegedly suffered harm. Therefore, Plaintiff's negligence claim fails as a matter of law because the communications are absolutely privileged under Civil Code section 47.

**F.  Defendants Are Entitled to Summary Judgment on Plaintiff's Cause of Action for Violations of Civil Code sections 51 and 52.1**

Plaintiff alleges that Defendants violated Civil Code sections 51 and 52.1 "by conducting themselves against the plaintiff as described in paragraph 7." FAC ¶ 55. Paragraph 7 of the FAC alleges that Defendants entered into a conspiracy with the Santa Barbara Defendants to violate Plaintiff's civil rights through an alleged unlawful seizure and malicious prosecution. FAC ¶ 55.

Civil Code section 51 provides that business establishments may not discriminate against individuals based on their personal characteristics or membership in a particular class (e.g., disability, sexual orientation, gender, race, religion).

Civil Code section 52.1 provides that an individual may bring a civil suit for

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

damages and injunctive and equitable relief:

> [i]f a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state[.]

Cal. Civ. Code §52.1.

Defendants argue they cannot be liable for violating Civil Code section 51 because there is no evidence that they discriminated against Plaintiff based on his personal characteristics or membership in a protected class. Plaintiff apparently concedes this, as he does not even address his Civil Code section 51 claim his opposition. Defendants argue that they did not violate Civil Code section 52.1 because they did not interfere with any of Plaintiff's rights through threats, intimidation, or coercion.

As to Civil Code section 52.1, Plaintiff argues that Defendants "ignore evidence that they (and other employees of Indochine) physically coerced [Plaintiff] off the premises for no legitimate reason. The statute does not limit itself to interferences with constitutional rights, but statutory protections against violence." Opp. at 24. This somewhat cryptic argument appears to be an accusation that Defendants committed a battery, in violation of the penal code, when they pushed Plaintiff into the alley. Plaintiff does not allege anywhere in the FAC that Defendants committed a battery, and Plaintiff's section 52.1 claim is explicitly premised on the allegations in FAC ¶ 7. These allegations relate only to what occurred *after* the officers confronted Plaintiff in the alley. Plaintiff cannot defeat summary judgment by introducing a new allegation or claim for the first time in his opposition papers. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291 (9th Cir. 2000) (affirming summary judgment on basis that plaintiff failed to allege a particular theory of liability in his complaint and raised it for the first time on summary judgment).

Plaintiff also argues that his claim "under § 52.1 incorporates all of the allegations of paragraph 7 which are not limited to constitutional violations, but separate protections

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |

under California law.   Hence, even if the federal claims fail, there remains the issue presented by the physical coercion which is protected against by California battery law." Opp. at 24-25.

The use of unreasonable force cannot be a basis for a section 52.1 claim alleging a violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures. "Section 52.1 is only applicable when a defendant intends by his or conduct to interfere with a separate, affirmative right enjoyed by a plaintiff; it does not apply to a plaintiff's allegation of use of excessive force absent a showing that the act was done to interfere with a separate state or federal constitutional right."  2008 WL 1990819, *9 (N.D. Cal. May 5, 2008) (granting summary judgment on plaintiff's section 52.1 claim) (citing *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998)).  Here, Plaintiff has not alleged that the officers' alleged use of excessive force interfered with a separate constitutional right.
Nor does Plaintiff's reference to "California battery law" provide any basis for liability under section 52.1.  The allegations in FAC ¶ 7 could be construed to allege a battery by the Santa Barbara defendants, but not by George or Gomez.  Plaintiff has failed to allege any facts demonstrating that George and Gomez used threats, intimidation, or coercion to cause the Santa Barbara defendants to forcibly seize Plaintiff.

Defendants have pointed to a lack of evidence to support Plaintiff's cause of action for violations of Civil Code sections 51 and 52.1.  Plaintiff has failed to proffer any evidence demonstrating a genuine dispute of material fact on these claims, on which Defendants are entitled to summary judgment.

## V.    CONCLUSION

Based on the foregoing, the Court GRANTS Defendants' motion for summary judgment.

|  | : |
|---|---|
| Initials of Preparer | SMO |

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-07904 AHM (PLAx) | Date | January 13, 2012 |
|---|---|---|---|
| Title | DREW JOSFAN v. INDOCHINE, et al. | | |